# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMARI MARQUIS WILLIAMS,

Defendant-Appellant.

FOR PUBLICATION
December 6, 2016
9:10 a.m.

No. 330853
Muskegon Circuit Court
LC No. 15-066489-FH

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

GLEICHER, J.

The police questioned defendant Jamari Williams after Williams discovered his pregnant girlfriend's murdered body in their shared apartment. Williams revealed that he and two friends passed the evening of his girlfriend's death by riding around in a car. The investigators probed Williams's exact whereabouts and the names of those who rode with him, extracting a timeline of the journey. Williams denied making any stops in addition to the several that he revealed. The police subsequently learned that the car had parked briefly at Williams's apartment complex during the timeframe in which the homicide likely occurred. They also determined that an additional passenger had been present in the car.

The prosecution charged Williams under MCL 750.479c, which makes it a felony to "[k]nowingly and willfully make any statement to [a] peace office that the person knows is false or misleading regarding a material fact in [a] criminal investigation." Following a preliminary examination, the district court bound Williams over to the Muskegon Circuit Court as charged. Williams challenged the bind over, contending that his omissions did not fall within the ambit of the statute. The circuit court denied Williams's motion and we granted Williams's application for leave to appeal. We hold that the plain language of the statute permits the prosecution of people who deliberately mislead the police by withholding material information and that probable cause exists that Williams satisfies this standard. We affirm.

I

The evidence in this case comes to us from Williams's preliminary examination. Shortly after Williams reported his girlfriend's death, the Muskegon Township police department launched a homicide investigation. Officers brought Williams to the police department for questioning; he was not in custody, and remained cooperative throughout. Sergeant David Wypa interviewed Williams throughout the course of eight to 10 hours, with breaks. Wypa asked

-1-

Williams to provide a timeline of his whereabouts before his discovery of the body. According to Wypa, the two went over the timeline "several times and he gave me some locations of where he was at" during the hours in question. Wypa also questioned Williams about the people with him that evening, and Williams "specifically" identified "just" two: Bre Laddie and Manual Smith.

Wypa did not "specifically" ask Williams if Williams had returned to the apartment complex during the evening, instead focusing on "where his locations were throughout the night." Wypa elaborated, "Throughout the interview process I asked him if he had -- did -- was there any other stops that they had made other than the ones that he had told me and he said no." Wypa learned from another witness that the car containing Williams had returned to the apartment complex's parking lot several hours before Williams found the body. When confronted with this information, Williams admitted that he had neglected to tell the officers about this stop.

Sergeant Timothy Thielbar questioned Williams six days later. During their conversation, Williams volunteered that a third person, Deshannon Redd, had been in the car that evening. Williams claimed he had forgotten about Redd when he was first interviewed.

Defense counsel opposed a bind over, asserting that Williams had not knowingly and willfully made any false statements or representations and had readily admitted to having inadvertently omitted certain facts after his memory was refreshed. The district court rejected this plea, finding that the language of MCL 750.479c(1)(a) and (1)(b) "contemplate concealing information or misleading by way of facts." These two subsections provide:

> (1) Except as provided in this section, a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not do any of the following:
>
> (a) By any trick, scheme, or device, knowingly and willfully conceal from the peace officer any material fact relating to the criminal investigation.
>
> (b) Knowingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation.

Williams reframed his argument in the circuit court by contending that the district court had conflated the elements of the offense set out in MCL 750.479c(1)(a) with those of subsection (1)(b); counsel pointed out that Williams had been charged only under subsection (1)(a). Williams urged that subsections MCL 750.479c(1)(a) and (b) are modeled on 18 USC 1001(a)(1) and (a)(2), and permit prosecution for a material omission under subsection (1)(a) only on proof of willful nondisclosure by means of a "trick, scheme, or device." The relevant sections of the federal statute state:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years

As to MCL 750.479c(1)(b), Williams insisted that the evidence supported merely an omission, and not a false or misleading *statement*.

The prosecution conceded that it had a better argument under MCL 750.479(1)(b) than (1)(a), and announced that it would not pursue the charge under the latter subsection. In a written opinion and order, Judge Timothy Hicks noted that MCL 750.479c(1)(b) has not been interpreted since it was enacted in 2012, and that the Legislature did not define what constituted a false or misleading statement for the purposes of that statute. *Black's Law Dictionary* (10th ed) defined the adjective "misleading" as "delusive; calculated to be misunderstood," and the verb "mislead" as "[t]o cause (another person) to believe something that is not so, whether by words or silence, action or inaction; to deceive," Judge Hicks observed. (Alteration in original.) He ruled that Williams's omission of relevant information regarding his whereabouts conformed to these definitions:

> Here, Williams knowingly provided his account of events to a peace officer with the actual knowledge that the officer was investigating his girlfriend's homicide. His omission of material facts, perhaps not a direct falsehood for the purposes of MCL 750.479c, temporarily misled the investigation as it excluded him as a suspect.

Judge Hicks denied Williams's motion to quash the bind over and dismiss the case, and later denied Williams's motion for reconsideration. We granted leave to appeal. *People v Williams*, unpublished order of the Court of Appeals, entered February 11, 2016 (Docket No. 330853).

II

When a witness agrees to speak with a peace office conducting a criminal investigation, the witness may not "knowingly and willfully make any statement . . . that the person knows is false or misleading regarding a material fact[.]" MCL 750.479c(1)(b). This case presents us with the first opportunity to address whether this language embraces passive failures to disclose material facts as well as outright lies. We hinge our decision on the Legislature's use of the term "false or misleading." Statements that omit material information may qualify as false or mislead an investigating officer. Evidence that Williams failed to inform Wypa of his stop at his

-3-

apartment and the name of his third confederate provides probable cause to believe that Williams violated MCL 750.479c(1)(b) and supports the circuit court's affirmance of the district court's bind over decision.

We review de novo a district court's decision that certain conduct falls within the scope of a criminal law. *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). In so doing, "our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002). "When the language is unambiguous, we give the words their plain meaning and apply the statute as written." *Rowland v Washtenaw Co Rd Com'n*, 477 Mich 197, 202; 731 NW2d 41 (2007).

We agree with Williams that MCL 750.479c(1)(a) and (1)(b) bear some similarities to 18 USC 1001(a)(1) and (a)(2). The initial subsections of both statutes declare that a person divulging information to the government may not employ a "trick, scheme or device" to "conceal" material information. But the language of MCL 750.479c(1)(b) diverges significantly from that of 18 USC 1001(a)(2). Michigan's statute prohibits knowingly and willfully making a statement regarding a material fact "that the person knows is false or misleading[.]" The federal statute punishes statements or representations that are "materially false, fictitious, or fraudulent[.]" We need not speculate on why our Legislature selected words differing from those chosen by Congress, and we do not profess expertise in the federal courts' application of the phrase "materially false, fictitious, or fraudulent" to information withheld or omitted.[1] Rather, we look to common parlance and Michigan case law as our guides to the meaning of the words at hand: "false or misleading."

According to Sergeant Wypa, Williams "said no" when asked if he had made any stops other than the ones he voluntarily revealed. This answer indisputably qualifies as a false statement, and brings the charged conduct within the statute's compass. Further, Williams's failure to reveal the apartment stop and the presence of Redd in the car falls within the reach of the statute's "misleading" aspect. In *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 114; 754 NW2d 259 (2008), our Supreme Court defined the word "mislead" as "1. to lead or guide in the wrong direction. 2. to lead into error of conduct, thought, or judgment; lead astray." An affirmatively false statement—a bald-faced lie—may turn an investigator's attention away from the true perpetrator or the source of valuable evidence. In that sense, it misleads. And a willful, knowing omission of pertinent information about a crime may lead the police down a fruitless path, permit the destruction of evidence while the police look in another direction, enable the escape of the actual culprit, or precipitate the arrest of an innocent person. The plain meaning of a "misleading statement" surely encompasses statements that leave out key details.

---

[1] Our abbreviated review of federal law suggests that a person who conceals or withholds information from a federal agent is indeed subject to prosecution under 18 USC 1001(a)(2). See *United States v Manning*, 526 F3d 611, 620 (CA 10, 2008) (defendant omitted financial assets from a statement to a probation officer).

Williams insists that an omission is not a "statement," and therefore falls outside subsection (1)(b)'s prohibition of "any statement . . . that is false or misleading[.]" The statute provides no definition of the term "statement." Once again, we apply the ordinary meaning of the word rather than definitions flowing from the law of hearsay. While nonassertive omissions may not qualify as "statements" under MRE 801(a), in general parlance "statements" include verbal and written expressions of something. An answer to a question necessarily represents an expression. It may mislead the listener by omitting relevant information. Suppose an attorney unlicensed to practice law in Michigan attempts to argue a motion in a circuit court. When asked by the judge whether she is qualified to practice in Michigan, the attorney replies, "Judge I've been practicing law for 25 years." The attorney has said something that excluded a material fact: she lacks a Michigan license. By making the statement, the attorney attempted to mislead the judge. And what about the teenager who when asked how his algebra class went responds "just fine," despite that he failed to attend it? Williams's answers to Wypa's questions are akin to these examples: statements omitting information that lead the interrogator in a wrong direction.

At the preliminary examination stage we cannot know whether the prosecutor will be able to marshal sufficient proof that a defendant "knowingly and willfully" left out certain details. At trial, Williams's claim that he simply forgot about the stop and Redd's presence due to physical and emotional exhaustion may prevail. And we acknowledge that because the police interrogated Williams in a noncustodial setting, he was not informed of his right to remain silent or that he could be prosecuted for omitting anything material in his voluntary retelling of the evening's events. The plain language of the statute conveys the Legislature's intent to hold fully responsible for accuracy and candor those who provide information to peace officers in the course of a criminal investigation. Because the plain language of MCL 750.479c(1)(b) permits Williams's prosecution for withholding information, we affirm the decision to bind him over for trial.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Jane E. Markey